## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

LORNA TINKER,
      Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.

Case No. 1:12-cv-420

Dlott, J.
Litkovitz, M.J.

## REPORT AND
## RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application

for disability insurance benefits (DIB) and supplemental security income (SSI).  This matter is

before the Court on plaintiff's Statement of Errors (Doc. 6), the Commissioner's response in

opposition (Doc. 9), and plaintiff's reply memorandum.  (Doc. 10).

### I.  Procedural Background

Plaintiff filed applications for DIB and SSI in February 2008, alleging disability since

January 31, 2008 due to depression and anxiety.  Plaintiff's applications were denied initially

and upon reconsideration.  Plaintiff, through counsel, requested and was granted a *de novo*

hearing before administrative law judge (ALJ) Deborah Smith.  Plaintiff and a vocational expert

(VE) appeared and testified at the ALJ hearing.  On August 26, 2010, the ALJ issued a decision

denying plaintiff's DIB and SSI applications.

### II.  Analysis

#### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable

physical or mental impairment that can be expected to result in death or that has lasted or can be

expected to last for a continuous period of not less than 12 months.   42 U.S.C. §§ 423(d)(1)(A)

(DIB), 1382c(a)(3)(A) (SSI).   The impairment must render the claimant unable to engage in the

work previously performed or in any other substantial gainful employment that exists in the

national economy.   42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation

process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

> 2) If the claimant does not have a severe medically determinable physical or
> mental impairment – *i.e.*, an impairment that significantly limits his or her
> physical or mental ability to do basic work activities – the claimant is not
> disabled.

> 3) If the claimant has a severe impairment(s) that meets or equals one of the
> listings in Appendix 1 to Subpart P of the regulations and meets the duration
> requirement, the claimant is disabled.

> 4) If the claimant's impairment does not prevent him or her from doing his or her
> past relevant work, the claimant is not disabled.

> 5) If the claimant can make an adjustment to other work, the claimant is not
> disabled.   If the claimant cannot make an adjustment to other work, the claimant
> is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§

404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).   The claimant has the burden of proof at the first four

steps of the sequential evaluation process.   *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541,

548 (6th Cir. 2004).   Once the claimant establishes a prima facie case by showing an inability to

perform the relevant previous employment, the burden shifts to the Commissioner to show that

the claimant can perform other substantial gainful employment and that such employment exists

in the national economy.  *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th

Cir. 1999).

### B.    The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through September 30, 2013.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since January 31, 2008, the alleged onset date (20 C.F.R. 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: depression [and] anxiety with panic attacks; a history of two knee arthroscopies; neck pain; and obesity (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except as follows: she can occasionally lift and/or carry 20 pounds and can frequently lift and/or carry 10 pounds.  She can stand and/or walk for [a] total of about six hours in an eight-hour workday and can sit for a total of about six hours in an eight-hour workday.  Pushing and/or pulling limitations are the same as those for lift/carry.  The [plaintiff] can balance and crawl frequently.  She can never climb ladders/ropes/scaffolds.  She can occasionally climb ramps/stairs, stoop, kneel, and crouch.  She is limited to occasional use of foot controls with her left lower extremity secondary to her history of knee surgeries.  She has the ability to carry out simple, routine tasks in a work environment that does not have strict production standards or schedules and has only occasional interaction with others.
>
> 6. The [plaintiff] is unable to perform any past relevant work[1] (20 CFR 404.1565 and 416.965).

---

[1]Plaintiff has past relevant work as a drycleaner counter attendant, kitchen helper, telemarketer, and gas station cashier.  (Tr. 33-34).

7. The [plaintiff] was born [in] . . . 1967 and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from January 31, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 15-24).

## C.  Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  In

4

deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

Plaintiff raises five assignments of error: (1) the ALJ erred in discounting plaintiff's credibility by mischaracterizing her compliance with medical treatment; (2) the ALJ improperly "cherry-picked" evidence to support her credibility finding; (3) the ALJ erred in giving the most weight to the opinions of the state agency reviewing doctors; (4) the ALJ improperly discounted the opinion of the consultative examining psychologist; and (5) the ALJ erred by not giving the most weight to the opinion of plaintiff's counselor. As plaintiff's first two assignments of error relate to the ALJ's credibility determination and the remaining three relate to the weight given to the medical opinions of record, the Court will combine its discussion into these two categories for the sake of brevity. For the following reasons, the Court finds the ALJ's decision is not supported by substantial evidence and should be reversed.

1.  The ALJ erred in assessing plaintiff's credibility.

Plaintiff argues the ALJ erred in discounting her credibility by: (1) mischaracterizing the record evidence to support her determination that plaintiff is noncompliant with medication; and (2) "cherry-picking" facts regarding plaintiff's activities of daily living.   Plaintiff asserts that review of the record as a whole demonstrates that plaintiff consistently attended medical appointments and took her medication as prescribed unless they caused negative side effects - which she reported to her medical providers.   Plaintiff also contends the ALJ improperly ignored evidence that contradicts her determination that plaintiff was not fully credible in her discussion of plaintiff's activities of daily living.

In response, the Commissioner asserts the ALJ properly considered the consistency of plaintiff's statements with the other record evidence, including plaintiff's daily activities, in assessing her credibility.   The Commissioner claims the ALJ appropriately discounted plaintiff's credibility by noting that: objective evidence of record was inconsistent with plaintiff's allegations of physical limitations; plaintiff engaged in various chores and hobbies; and the evidence did not always demonstrate that plaintiff was taking psychiatric medication.   The Commissioner asserts the ALJ's decision is supported by substantial evidence and should be affirmed.

The undersigned will first address the issue of plaintiff's alleged noncompliance with prescribed treatment.   In her discussion of plaintiff's compliance with medication, the ALJ stated:

> [Plaintiff] has not always complied with treatment recommendations (See, e.g., Exhibits 1F and 15F[2] [Tr. 250-68, 408-17]).   The record indicates that when she

---

[2] The Commissioner concedes that the bulk of the records contained in Exhibit 1F pre-date plaintiff's alleged onset date of disability.   Therefore, these records are not particularly relevant to the ALJ's decision.

actually took psychotropic medication, she felt better (see Exhibit 9F/2 and 15F [Tr. 316, 408-17]). According to treatment notes from Trinity Family Medicine dated December 18, 2008, [plaintiff]'s depression and anxiety improved on Abilify, with [plaintiff] being less reclusive and more interactive with her children (Exhibit 9F/2 [Tr. 316]). However, multiple emergency room notes do not mention her taking any psychiatric medicines (Exhibit 14F [Tr. 359-407]) which appears to suggest [plaintiff] has not taken medication with regularity. For example, during an emergency room visit on December 13, 2009, [plaintiff] reported that she had a prescription for Wellbutrin but had not filled it at that time (Exhibit 13F/9, 3 [Tr. 349, 355]).[3]

(Tr. 22). Notably, there is no medical *opinion* relied upon by the ALJ that draws a correlation between plaintiff's compliance and her level of functionality. It thus appears that the ALJ's determination that plaintiff was not compliant with treatment, and consequently not fully credible, is based solely on the above evidence.

The ALJ determined that plaintiff was "not always" compliant with treatment recommendations and therefore not credible because a small portion of the record showed that plaintiff's mood improved at times with medication and she did not fill a prescription for Wellbutrin. Yet, the ALJ cited to only a handful of records to support her determination that plaintiff felt better when taking psychotropic medication, while ignoring other substantial evidence to the contrary. (Tr. 22, citing Tr. 316, 408-17). The record includes a multitude of treatment notes showing that plaintiff continued to suffer from severe symptoms due to her mental impairments even when she regularly took psychotropic medications. *See, e.g.*, Tr. 336 (in June 2008 plaintiff reported anxiety and depression despite taking Valium and Celexa); Tr. 332-334 (while plaintiff's anxiety and depression were reported as "better" on Librium in July 2008, less than 3 weeks later in August 2008 plaintiff experienced an increase in suicidal ideation

---

[3] The ALJ cites to Tr. 349 and 355 regarding plaintiff's Wellbutrin prescription. However, there is no mention of Wellbutrin on these pages. Rather, the references to Wellbutrin appear at Tr. 350 and 351.

and "went to mom's house to be safe"; she was prescribed Abilify to address ongoing depression and anxiety); Tr. 330 (plaintiff reported bout of depression in September 2008 while taking Abilify); Tr. 323 (plaintiff reported ongoing depression, malaise, and anxiety despite taking Celexa, Librium, Clonidine, and Abilify); Tr. 425-26, 435, 455, 465, 469-70, 473, 476, 487, 489, 492 (2009-2010 treatment notes from plaintiff's primary care physician include ongoing reports of heightened anxiety with depression despite taking psychotropic medications, including Wellbutrin); Tr. 508-91 (counseling notes from plaintiff's therapist demonstrate that plaintiff continued to have severe depression and anxiety throughout 2008-2010 despite being on various psychotropic drugs). While the ALJ cited to a smattering of records supporting her finding that plaintiff received some relief from her mental impairments with medication, she failed to discuss the overwhelming majority of the medical evidence which shows that despite taking various psychotropic medicines, plaintiff did not feel "better." Likewise, the ALJ improperly relied on one notation that plaintiff had not filled a prescription for Wellbutrin in suggesting that plaintiff was not compliant with treatment while ignoring hundreds of contrary records. The ALJ must consider the entire record and may not disregard pertinent evidence in making credibility determinations. *Hephner*, 574 F.2d at 362. *See also* SSR 96-7p, 1996 WL 374186, at *1-2 (July 2, 1996). The ALJ's cursory and selective discussion of the record evidence in this regard fails to provide substantial support for her credibility determination.

In addition, the ALJ's finding that emergency department records did not reflect plaintiff was taking medication for her mental impairments is contradicted by the record. The ALJ stated that multiple emergency room records "do not mention her taking any psychiatric medications . . . which appears to suggest [plaintiff] has not taken medication with regularity." (Tr. 22, citing

8

360-407). The ALJ did not point to any specific emergency department visits in her decision to support her conclusion in this regard. The Court's review of the relevant records, however, indicates that emergency department records from May 2008 show plaintiff was "on medications," including Valium and Fluoxetine (generic Prozac) (Tr. 394), and records from December 2009 show plaintiff was taking Trazadone and Celexa and was receiving psychiatric treatment at the time of her admission. (Tr. 362).[4] Thus, the ALJ's assumption that plaintiff was not taking psychotropic medications "regularly" is not supported by substantial evidence.

The undersigned recognizes that it is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers*, 486 F.3d at 247 (citations omitted). In light of the ALJ's opportunity to observe the individual's demeanor, the ALJ's credibility finding is entitled to deference and should not be discarded lightly. *Buxton*, 246 F.3d at 773; *Kirk*, 667 F.2d at 538. "Nevertheless, an ALJ's credibility determinations . . . must be reasonable and supported by substantial evidence." *Tyrpak v. Astrue*, 858 F. Supp.2d 872, 877-78 (N.D. Ohio 2012) (citing *Rogers*, 486 F.3d at 249). In this case, the ALJ's reason for discounting plaintiff's credibility, *i.e.,* alleged noncompliance with medications, is not substantially supported by the record and is unreasonable. The bulk of the medical evidence demonstrates that plaintiff suffered significant symptoms from her depression and anxiety despite being compliant with medication treatment and records from plaintiff's emergency room visits clearly indicate that she was taking medications for her mental health impairments. Accordingly, the undersigned finds that the ALJ's decision to discount plaintiff's

---

[4]Plaintiff was seen in the emergency department on May 22, 2008 for suicidal ideation at the insistence of her primary care physician (Tr. 409) and was subsequently hospitalized at Atrium Medical Center until May 26, 2008. She was admitted to Mercy Hospital Fairfield on December 13, 2009 for suicidal thoughts. (Tr. 360-69). Plaintiff was transferred to Mercy Hospital Clermont (Tr. 365) and was discharged in stable condition at her own

9

credibility on the basis of noncompliance with her treatment regimen is not supported by
substantial evidence.

The ALJ's secondary rationale for discounting plaintiff's credibility - that her activities of
daily living are inconsistent with her statements regarding the severity of her mental impairments
(Tr. 21) - similarly lacks substantial support in the record.   The ALJ noted that plaintiff testified
that she has limited concentration and focus; difficulty reading and watching movies; is easily
agitated when she tries to focus and may experience panic attacks precluding her ability to
perform repetitive, simple assembly work; does not do housework; has no social life; does not
answer the phone or socialize with friends; and continues to feel depressed.  *See* Tr. 21.   To
support her finding that plaintiff's testimony is not fully credible, the ALJ provided the following
as to plaintiff's daily living activities:

> The actual treatment records in the Hamilton Counseling Center[5] indicate that
> [plaintiff] has been busy caring for children with emotional problems and, in one
> case, problems with the criminal justice system (son selling marijuana and
> daughter for theft) and attending doctor's appointments for her children.
> Counseling notes show that [plaintiff] does have limitations but has been busy
> caring for her children and going to appointments for herself and her children.
> She has social supports and is able to perform many activities of daily living (See
> Exhibit 18F [Tr. 507-97]).  These records show her visiting her mother once a
> week or her mother coming to stay with her, watching television and movies,
> listening to music, coloring to relax, reading, walking to the mailbox daily and
> walking at the mall, doing crafts, going shopping to IKEA/the pet store, going to
> the library, making rugs with a latch hook kit, going to the pool, taking her
> children to the park, doing lots of driving since she was the one in the family with
> the car, in addition to attending her counseling sessions.

(Tr. 19).[6]

---

request following behavior therapy.   (Tr. 349).

[5]The record includes plaintiff's mental health treatment notes from the Hamilton Counseling Center from
September 3, 2008 to May 5, 2010.   (Tr. 507-91).

[6] The ALJ's discussion of plaintiff's activities of daily living is contained within her analysis of how much
weight to give the opinion of Bess Davisson-Odle, P.C., plaintiff's treating therapist.  *See* Tr. 19.  However, the

The ALJ's credibility finding as to plaintiff's daily activities is without substantial support in the record because the ALJ mischaracterized the evidence of plaintiff's activities. The ALJ cited generally to ninety pages of the Hamilton Counseling Center treatment notes to support her finding that plaintiff, among other things, was going to the mailbox daily, going to the mall, IKEA, and the library, engaging in crafts, and regularly driving.  (Tr. 19).  The ALJ has painted an inaccurate picture of plaintiff's activities.  For example, the following represents the whole of the evidence of plaintiff's daily mailbox trips: (1) in September 2009, plaintiff reported at two separate therapy sessions that she was walking to the mailbox daily (Tr. 544, 546); in January 2010, plaintiff's goal was to walk to the mailbox every day but she reported that she had not been leaving the house (Tr. 527-28); in February 2010, plaintiff reported that she had not been going to the mailbox (Tr. 522); in March 2010, plaintiff's therapeutic plan included a goal for plaintiff to walk to mailbox five times a week (Tr. 517) and she reported making the trip every other day.  (Tr. 516).  This evidence does not demonstrate that plaintiff was walking to the mailbox daily but, rather, that plaintiff struggled to engage in the minor daily activity of leaving her home to pick up her mail, so much so that it became a therapeutic goal.[7]  Further, while the ALJ stated plaintiff was engaged in crafts, plaintiff only reported in October 2008 and September 2009 that she was engaging in crafts (Tr. 545-46) and all other treatment notes in this regard identify merely that plaintiff was thinking about crafting or doing other activities.  (Tr. 534, 551, 560).  *See also* Tr. 530 (plaintiff reported her *intent* to go to IKEA and the library).  It is also unclear how plaintiff's intermittent ability to pick up the mail or do simple crafts on her

---

ALJ references this discussion as support for her credibility determination.  *See* Tr. 21.

[7] The ALJ's finding that plaintiff was regularly driving is likewise inconsistent with the record.  Though plaintiff reported driving a lot because she was the only person with a car she also reported stress and fear when driving and later reported her reliance on County transportation to and from medical appointments.  (Tr. 537, 565).

11

own schedule is inconsistent with her reports of debilitating depression. It appears, rather, that plaintiff engaged in these solitary activities as a coping mechanism for her stress and depression. *See, e.g.*, Tr. 565 (plaintiff reported that coloring keeps her busy but that she had ongoing struggles with depression including suicidal ideation). The ALJ erred by failing to address these concurrent records regarding the limited nature of plaintiff's daily activities and citing only those records casting plaintiff in a capable light to the exclusion of these, and others, which do not. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240-41 (6th Cir. 2002). Because the ALJ selectively cited the evidence pertaining to plaintiff's daily activities, her decision to discount plaintiff's credibility on this basis is not supported by substantial evidence.

For the above reasons, the undersigned recommends that plaintiff's first and second assignments of error be sustained.

1. The ALJ erred in weighing the medical opinions of record.

Plaintiff's third, fourth, and fifth assignments of error challenge the ALJ's weighing of the various medical opinions of record. Plaintiff argues that the ALJ should have given the most weight, not "little weight," to the opinion of Ms. Davisson-Odle, plaintiff's treating counselor, given the longitude and frequency of her treatment relationship with plaintiff. Plaintiff further contends the ALJ erred in discounting the opinion of the consultative examining psychologist, Stephen Fritsch, Psy.D, given his opportunity to examine plaintiff. Lastly, plaintiff claims the ALJ's decision to give the most weight to the opinions of the state agency reviewing psychologists is erroneous because their opinions were based on an incomplete review of the record.

The applicable regulations lay out the three types of acceptable medical sources upon

12

which an ALJ may rely on: treating source, nontreating source, and nonexamining source.   20

C.F.R. §§ 404.1502, 416.902.   A treating source opinion on the nature and severity of a

claimant's impairments is generally entitled to the most weight, and the Social Security

Administration must give "good reasons in [its] notice of determination or decision for the

weight [it gives the claimant's] treating source's opinion."   *Smith v. Comm'r of Soc. Sec.*, 482

F.3d at 875.   This "good reasons" requirement applies only to treating sources.   *Id.* at 876.

"With regard to nontreating, but examining, sources, the agency will simply generally give more

weight to the opinion of a source who has examined the claimant than to the opinion of a source

who has not examined him."   *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010)

(citing 20 C.F.R. § 404.1527(d)(1)) (internal citations omitted).   Under the regulations, these

guidelines apply only to "acceptable medical sources."   *See* Soc. Sec. Rul. No. 06-03p, 2006 WL

2329939, at *4 (2006).[8]   However, "[t]hese factors represent basic principles that apply to the

consideration of all opinions" and opinion evidence from other sources, such as counselors, "may

be based on special knowledge of the individual and may provide insight into the severity of the

impairment(s) and how it affects the individual's ability to function."   *Id.*

   a.   *Weight to Ms. Davisson-Odle, Plaintiff's Treating Counselor*

     Plaintiff received the majority of her mental health treatment at the Hamilton Counseling

Center where she regularly treated with her therapist Ms. Davisson-Odle, a professional

counselor, from September 2008 to May 2010.   (Tr. 507-91).   Ms. Davisson-Odle provided

---

    [8] "Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner.   20 C.F.R. § 402.35(b)(1).   In *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 549 (6th Cir. 2001), the court refrained from ruling on whether Social Security Rulings are binding on the Commissioner in the same way as Social Security Regulations, but *assumed* that they are.   [The Court] makes the same assumption in this case."   *Ferguson v. Comm'r of Soc. Sec.*, 627 F.3d 269, 272 n.1 (6th Cir. 2010) (emphasis in original).

responses to two mental health impairment questionnaires: one in September 2009 (Tr. 343-46) and the other in March 2010.  (Tr. 419-22).  In the 2009 questionnaire, Ms. Davisson-Odle opined that plaintiff had marked limitations in her ability to understand, remember, and carry out complex job instructions; work in coordination with or proximity to co-workers without distracting or being distracted by them; and maintain concentration, persistence or pace so as to complete tasks in a timely manner in a work or work-like setting.  (Tr. 344-45).  In 2010, Ms. Davisson-Odle opined that plaintiff had further marked limitations in various functional areas including, but not limited to, her ability to understand, remember and carry out very short and simple instructions on a sustained basis; maintain regular attendance; make simple work-related decisions; behave in an emotionally stable manner; and respond appropriately to changes in the work setting.  (Tr. 420-42).  In support of this later opinion, Ms. Davisson-Odle noted that plaintiff had been twice hospitalized since 2008 for suicidal ideation.  (Tr. 422).

The ALJ gave "little weight" to Ms. Davisson-Odle's 2010 opinion citing to the following: (1) her status as a counselor and not a psychiatrist; (2) plaintiff's activities of daily living described in the Hamilton Counseling Center records; (3) recent notes indicating that plaintiff's psychiatric status was stable; (4) inconsistency with the treatment notes; and (5) plaintiff's noncompliance with mediations.  (Tr. 19-20).  Upon review of the record, the undersigned finds that the ALJ's stated bases for rejecting this opinion are not supported by substantial evidence.

At the outset, the undersigned recognizes that Ms. Davisson-Odle is classified as an "other source," and not an "acceptable medical source," under the regulations and that the ALJ was not required to give her opinion controlling weight.  Soc. Sec. Ruling 06-03p, 2006 WL

14

2329939, at *4.   Nonetheless, the Commissioner will consider evidence from other sources "to show the severity of [the claimant's] impairment(s) and how it affects [the claimant's] ability to work."   20 C.F.R. §§ 404.1513(d) and 416.913(d).[9]   In a case such as this where plaintiff has consistently received the majority of her mental health treatment with a professional counselor, it is appropriate for the ALJ to weigh the counselor's opinion in conformity with 20 C.F.R. §§ 404.1527(c) and 416.927(c) and consider the frequency and longitude of treatment, the consistency of the opinion with other evidence, the specialty of the provider, and any other factors that tend to support or refute the opinion.   Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *4-*5.

It does appear that the ALJ considered some of these factors in weighing Ms. Davisson-Odle's opinion, such as its consistency with other record evidence.   *See* Tr. 19-20 (discussing consistency between the March 2010 opinion and treatment notes from the Hamilton Counseling Center).   Thus, it seems the ALJ recognized the import of Ms. Davisson-Odle's role as plaintiff's primary mental health provider and that her status as a counselor, taken alone, did not justify discounting the opinion.   Nevertheless, the ALJ's stated bases for discounting Ms. Davisson-Odle's opinion are not supported by substantial evidence.

The ALJ determined that Ms. Davisson-Odle's opinion that plaintiff had numerous

---

[9] The Commissioner has recognized:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of treatment and evaluation functions previously handled primarily by physicians and psychologists.   Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file.

Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *3.

marked limitations in her functional abilities was inconsistent with plaintiff's activities of daily living as reported in the treatment notes. Specifically, the ALJ noted that plaintiff regularly visits with her mother, watches television and movies, listens to music, colors, reads, walks daily to the mailbox and walks at the mall, engages in crafts, goes shopping, regularly drives, and goes to the library, the pool, and the park. (Tr. 19) (citing Tr. 507-91). As discussed above, the ALJ's description mischaracterized the evidence of plaintiff's daily activities. *See supra*, § II (D)(1). The record evidence more accurately shows that plaintiff *attempted* or *planned* on engaging in these activities – not that she routinely did so. *See* Tr. 530, 534, 551, 560. Further, contrary to the ALJ's description, plaintiff did not regularly check her mail; rather, she experienced difficulty accomplishing even this mundane task during times of exacerbated depression. *See* Tr. 522, 527-28. The undersigned also notes that even if plaintiff were able to regularly engage in crafts, get her mail, or go to the store, there is no evidence that plaintiff "could do any of these activities on *a sustained basis*, which is how the functional limitations of mental impairments are to be assessed." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013) (emphasis in original). It is unclear how plaintiff's ability to spend time with her family or engage in crafts in the controlled home environment does not contradict Ms. Davisson-Odle's opinion that plaintiff has marked limitations in her ability to behave in an emotionally stable manner or engage in sustained work activities. *Id.* Further, many of the activities cited by the ALJ are "taken out of context or are offset by other examples in the record." *Id.* at 378. For example, while plaintiff was driving more frequently in April 2009, driving also triggered her anxiety. (Tr. 565). Viewing the evidence as a whole, it is clear that plaintiff is much more limited in her daily activities than as described by the ALJ. Therefore,

16

the ALJ's finding that Ms. Davisson-Odle's opinion was inconsistent with this evidence is not

substantially supported.

The ALJ also explained that Ms. Davisson-Odle's opinion deserved only "little weight"

because more recent notes from the Hamilton Counseling Center "refer to [plaintiff's] psychiatric

status as stable and by February 2010 she reported that she was doing well and . . . her mood was

described as stable." (Tr. 19). The ALJ found these treatment notes to be inconsistent with the

restrictive limitations provided in the March 2010 opinion. Though the ALJ did not provide a

specific citation, it appears she is referencing treatment notes from February 23, 2010. (Tr. 520).

When viewed in context, however, the February 23, 2010 treatment note does not support the

ALJ's conclusion. Shortly before the February 23, 2010 visit, on February 11, 2010, plaintiff

described ongoing insomnia and low energy; that "she doesn't want to be here" and that she feels

trapped; that she hadn't been going to the mailbox; and that she wished she could stay with her

mother but that she "has too many responsibilities at home." (Tr. 522). On March 4, 2010,

shortly after the February 23 visit, plaintiff reported problems with sleeping, eating,

concentration, and low energy, as well as experiencing fleeting suicidal thoughts. (Tr. 518).

On March 23, 2010, plaintiff was still experiencing the same problems and reported that Abilify

was not helping at all. (Tr. 516). No significant changes were noted in the April 2010

treatment notes. (Tr. 510, 513). The ALJ's selective citation to the one record describing

plaintiff as "doing well" fails to accurately portray Ms. Davisson-Odle's treatment notes given

the significant depression and anxiety symptoms plaintiff experienced in both earlier and later

generated records. The undersigned therefore finds that the ALJ's decision to discount Ms.

Davisson-Odle's opinion on the basis of plaintiff's short-lived improvement is not supported by

17

substantial evidence.

Lastly, the ALJ discounted Ms. Davisson-Odle's opinion because plaintiff was allegedly noncompliant with her medications. Because the undersigned has already determined that the ALJ's finding in this regard is not substantially supported by the record evidence, this too cannot form a proper basis for rejecting Ms. Davisson-Odle's opinion. The undersigned notes that Ms. Davisson-Odle is plaintiff's primary psychological healthcare provider and has provided plaintiff with two years of regular (bi-weekly) counseling. Given the frequency and longitude of her treatment relationship with plaintiff, the lack of a contrary opinion from another treating or examining source, and the consistency between treatment notes and the provided limitations, the ALJ erred in discounting Ms. Davisson-Odle's opinion.

b. *Weight to Dr. Fritsch, Consultative Examiner*

Plaintiff asserts that pursuant to 20 C.F.R. § 404.1527(c)(1), the ALJ should have given greater weight to the opinion of Dr. Fritsch given his status as an examining psychologist.[10] Plaintiff contends the ALJ's stated bases for discounting Dr. Fritsch's opinion - that it was "based largely on [plaintiff]'s subjective allegations" and was inconsistent with plaintiff's activities of daily living and the opinion of state agency reviewing psychologist David Dietz, Ph.D. – are not substantially supported. The undersigned agrees.

On June 2, 2008, plaintiff was evaluated by Dr. Fritsch for disability purposes. (Tr. 269-74). Plaintiff reported that she suffered from depression, had little energy and limited social activity, and was recently hospitalized for suicidal ideation. (Tr. 269). Dr. Fritsch noted that plaintiff presented with appropriate appearance and behavior, logical conversation with lethargic

---

[10]In her Statement of Errors, plaintiff argued that the ALJ violated the treating physician rule with respect to Dr. Fritsch. (Doc. 6 at 12). However, in her reply brief plaintiff acknowledges that the treating physician rule does

speech, a flat affect, and dysphoric mood.  (Tr. 271).  Plaintiff was described as having "a

depressed and negative appraisal system, characterized by pessimism, hopelessness and a

depressive explanatory style (perceiving problems to be global, permanent and uncontrollable)."

(Tr. 272).  Dr. Fritsch diagnosed Major Depressive Disorder, Recurrent, Severe Without

Psychotic Features and Pain Disorder Associated With Both Psychological Factors and Medical

Condition.  (Tr. 273).  Dr. Fritsch opined that plaintiff was able to understand, remember, and

carry out short, simple instructions; had marked impairments in her ability to maintain attention,

concentration, persistence and pace with simple, repetitive tasks; had no limitation in her ability

to relate to others including coworkers and supervisors; and was markedly impaired in her ability

to withstand stress and pressures associated with daily work activity.  (Tr. 272-73).  Dr. Fritsch

assigned plaintiff a GAF score of 46, indicating serious symptoms or impairment in social or

occupational functioning.[11]  (Tr. 273).

The ALJ did not specify how much weight she gave Dr. Fritsch's opinion but indicated

that she did not adopt his opinion that plaintiff had marked restrictions.  In support, the ALJ

noted that Dr. Fritsch's conclusions appeared to be primarily based on plaintiff's subjective

allegations; the majority of mental health records were generated after Dr. Fritsch's examination;

and it was not clear whether plaintiff was taking psychiatric medications at the time of the

evaluation.  Further, the ALJ concurred with Dr. Dietz's finding that Dr. Fritsch's opinion was

not consistent with plaintiff's activities of daily living of which Dr. Fritsch was apparently

---

not apply to Dr. Fritsch as he is a one-time consultative examiner.  *See* Doc. 10 at 5.

[11]"GAF," Global Assessment Functioning, is a tool used by health-care professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness.  It is, in general, a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation.  *See Martin v. Commissioner*, 61 F. App'x. 191, 194 n.2 (6th Cir. 2003); *see also* Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision ("DSM-IV-TR") at 32-34.

unaware.  (Tr. 19).  For the following reasons, the undersigned finds that the ALJ's decision to reject Dr. Fritsch's limitations is not supported by substantial evidence.

First, in the context of mental impairments, plaintiff's subjective statements are an appropriate basis for a doctor's opinion on functional abilities.  *See Blankenship*, 874 F.2d at 1123 (citing 20 C.F.R. § 404.1529).  In the arena of mental health treatment, it is often the case that psychological professionals are required to rely primarily on the statements of patients in forming their diagnoses and opinions; such "talk therapy" is the underpinning of psychiatric treatment and therapists may rely on subjective complaints elicited from patients during clinical interviews in formulating their medical opinions on functional limitations.  *See Warford v. Astrue*, No. 09-52, 2010 WL 3190756, at *6 (E.D. Ky. Aug. 11, 2010) (relying on *Blankenship*, 874 F.2d at 1121).  Consequently, the fact that Dr. Fritsch relied, in part, on plaintiff's subjective reports in formulating his opinion is not a sufficient basis for discounting his opinion given the acceptance of this diagnostic method in the field of mental health treatment.

Second, while it is true that the majority of plaintiff's mental health treatment records were generated after Dr. Fritsch issued his report, the ALJ failed to identify how this evidence is inconsistent with his opinion.  Indeed, these records seem to bolster his findings that plaintiff has marked limitations.  As discussed above, plaintiff was twice hospitalized for suicidal ideation, she consistently reported for two years that she had debilitating symptoms associated with her depression and anxiety, and plaintiff's treating therapist opined that she had similar marked limitations.  This record evidence is consistent with Dr. Fritsch's opinion and does not provide a basis for rejecting his limitations.

Third, the ALJ's notation that "it is not clear that [plaintiff] was taking psychiatric

20

medications regularly" at the time of Dr. Fritsch's June 2008 consultation is inconsistent with the record evidence. Records from plaintiff's primary care physician include notations that plaintiff was taking Lexapro in late March 2008 (Tr. 252); hospital records from May 2008 show plaintiff was "on medication" upon her admission (Tr. 394) and was discharged with Trazadone and Celexa (Tr. 412); five days before plaintiff's examination with Dr. Fritsch, progress notes from plaintiff's primary care physician show plaintiff was still taking Celexa (Tr. 338); plaintiff reported to Dr. Fritsch that she was currently taking Celexa, Trazadone, and Valium (Tr. 270); three weeks later her primary care physician discontinued Valium, increased her dosage of Celexa, and started plaintiff on Librium (Tr. 336); and September 2008 treatment notes demonstrate plaintiff was still taking Celexa at that time. (Tr. 324). Thus, the ALJ's assertion that it is unclear whether plaintiff was taking psychiatric medications at this time is not consistent with the record evidence and does not justify rejecting Dr. Fritsch's assessed limitations.

Lastly, the ALJ's reliance on Dr. Dietz's opinion in rejecting the functional limitations advanced by Dr. Fritsch is misplaced. The Court will not reiterate the evidence of plaintiff's activities of daily living, discussed *supra*, and will focus on the activities identified by Dr. Dietz as being inconsistent with Dr. Fritsch's provided limitations. While, "the extent to which an acceptable medical source is familiar with the other information in [a plaintiff's] case record" is a relevant factor for the ALJ to consider in deciding how much weight to afford a medical opinion, 20 C.F.R. § 416.927(d)(6), Dr. Fritsch's findings are not inconsistent with plaintiff's activities. Dr. Dietz noted that Dr. Fritsch did not appear to be aware of plaintiff's "activities, particularly her recent history of work as a bus monitor." (Tr. 291). The ALJ agreed with Dr. Dietz's assessment, apparently persuaded that plaintiff's work activity was inconsistent with Dr.

21

Fritsch's findings of marked limitations.  (Tr. 19).   The record contains scant information

regarding plaintiff's brief stint as a bus monitor aside from an earnings report showing that in

2008 plaintiff earned $805.38 which, as plaintiff notes, equates approximately to earnings over a

two week period of time.  *See* Tr. 154.  *See also* Tr. 31 (plaintiff testified that she believed the

bus monitor job would be less stressful than other work but that she was unable to "follow

through" with the job).   Given that the evidence of record as to plaintiff's bus monitor work

shows that she was unable to do the job as a result of stress, it is wholly unclear how plaintiff's

unsuccessful, though admirable, attempt to return to work is inconsistent with Dr. Fritsch's

opinion that plaintiff has marked impairments in her ability to persist in work activities.

The ALJ must generally "give more weight to the opinion of a source who has examined

[a claimant] than to the opinion of a source who has not."   20 C.F.R. §§ 404.1527(c)(1),

416.927(c)(1).   Here, however, the ALJ rejected the opinion of the examining source while

giving greater weight to the opinion of the state agency reviewing psychologist, whose only

exposure to plaintiff was a review of her file.   Despite the consistency of Dr. Fritsch's opinion

with that of plaintiff's treating therapist, plaintiff's testimony and subjective reports throughout

the record, and findings throughout plaintiff's treatment notes, the ALJ rejected this opinion and

in so doing disregarded the tenants of §§ 404.1527(c)(1) and 416.927(c)(1).   The ALJ's stated

reasons for rejecting Dr. Fritsch's limitations are not substantially supported by the record

evidence.   The undersigned therefore finds that the ALJ erred in weighing Dr. Fritsch's opinion.

c. *Weight to State Agency Non-examining Psychologists*

Plaintiff's file was twice reviewed by non-examining state agency psychologists.   On

July 15, 2008, Dr. Dietz reviewed plaintiff's file and completed a psychiatric review technique

and mental residual functional capacity (RFC) assessment. (Tr. 275-93). Dr. Dietz gave

controlling weight to Dr. Fritsch's opinion aside from opining that plaintiff had only moderate

limitations in her ability to maintain concentration, persistence, and pace. (Tr. 285, 291). On

January 13, 2009, Todd Finnerty, Psy. D., reviewed plaintiff's file. (Tr. 340). Dr. Finnerty

found plaintiff's allegations to be credible, but affirmed Dr. Dietz's assessment as written. *Id.*

The ALJ gave "great weight" to Dr. Dietz's assessment and adopted his limitations in

formulating plaintiff's RFC, noting that his opinion was affirmed by Dr. Finnerty. (Tr. 19).

Plaintiff argues the ALJ erred by adopting the RFC opinion of Dr. Dietz because it was

based upon an incomplete review of the record and formulated before "the vast majority of

medical evidence in this case" was submitted, including all the treatment records from Hamilton

Counseling Center. Plaintiff's argument is well-taken.

The ALJ failed to acknowledge that neither Dr. Dietz nor Dr. Finnerty had the

opportunity to review plaintiff's Hamilton Counseling Center treatment notes prior to providing

their opinions. In addition, Dr. Dietz's refusal to adopt Dr. Fritsch's assessment was based upon

purported disparities between Dr. Fritsch's opinion and plaintiff's activities of daily living,

including her work as a bus monitor. As discussed above, the record evidence of plaintiff's

daily activities, particularly the treatment notes generated after Dr. Dietz provided his opinion,

show that plaintiff's depression, at times, prevents her from engaging in even the most basic

activities such as leaving her home to pick up her mail. This evidence is consistent with Dr.

Fritsch's findings of marked limitations. Further, the record is not clear exactly how long

plaintiff actually worked as a bus monitor, aside from her testimony that she was unable to

follow through with the work.[12]  Consequently, the undersigned finds that the ALJ's decision to give "great weight" to Dr. Dietz's opinion is not substantially supported by the evidence.

### III. This matter should be reversed and remanded for an award of benefits.

This matter should be remanded for an award of benefits.  "[A]ll essential factual issues have been resolved and the record adequately establishes . . . plaintiff's entitlement to benefits."  *Faucher v. Sec'y of HHS,* 17 F.3d 171, 176 (6th Cir. 1994).  *See also Abbott v. Sullivan,* 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Sec'y of HHS,* 820 F.2d 777, 782 (6th Cir. 1987).  Based on the June 2008 RFC assessment of Dr. Fritsch (Tr. 269-273) and the March 2010 RFC assessment of Ms. Davisson-Odle (Tr. 419-422), the vocational expert testified that plaintiff would be unable to perform any competitive work.  (Tr. 48, 49).  Thus, the proof of disability is strong and opposing evidence is lacking in substance.  A remand in this matter would merely involve the presentation of cumulative evidence and would serve no useful purpose.  *Faucher,* 17 F.3d at 176.  *See also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler,* 771 F.2d 966, 973 (6th Cir. 1985).  Accordingly, this matter should be remanded for an award of benefits.

### IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **REVERSED** and **REMANDED** for an award of benefits pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: ___7/1/13___

Karen L. Litkovitz
United States Magistrate Judge

---

[12] Plaintiff's earnings record indicates she earned $805.38 in all of 2008 for Paul's Bus Service, Inc. (Tr. 154).  Even at minimum wage, this would represent no more than two or three weeks of full-time work.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

LORNA TINKER,
     Plaintiff,

     vs.

COMMISSIONER OF
SOCIAL SECURITY,
     Defendant.

Case No. 1:12-cv-420
Dlott, J.
Litkovitz, M.J.

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).

25